**ORAL ARGUMENT NOT YET SCHEDULED**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**NO. 24-3014**

---

**UNITED STATES OF AMERICA,**            Plaintiff-Appellee,

v.

**JEFFREY HENRY WILLIAMSON,**            Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**REPLY BRIEF OF APPELLANT**

---

                                               A. J. KRAMER
                                               FEDERAL PUBLIC DEFENDER

                                               Counsel for Appellant
                                               625 Indiana Avenue, NW
                                               Suite 550
                                               Washington, DC 20004
                                               (202) 208-7500
                                               a._j._kramer@fd.org

District Court
Cr. No. 20-195 (RBW)

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES............................................................................ ii

SUMMARY OF ARGUMENT........................................................................1

ARGUMENT ..................................................................................................2

    I.      THE DISTRICT COURT IMPROPERLY ORDERED AN EXAMINATION OF MR. WILLIAMSON TO DETERMINE WHETHER A DANGEROUSNESS CERTIFICATE SHOULD BE FILED ................................................................................................2

          A.    The District Court's Order Was Contrary to the Plain Language of the Statute ...................................................................2

          B.    The District Court Had No Authority to Issue Any Order Related to § 4246 ...............................................................................12

CONCLUSION ..............................................................................................14

CERTIFICATE OF COMPLIANCE ..............................................................15

# TABLE OF AUTHORITIES

**CASES**

*Bates v. United States*, 522 U.S. 23 (1997)..............................................................3

*Dean v. United States*, 556 U.S. 568 (2009) ............................................................3

*Fischer v. United States*, 603 U.S. 480 (2024)......................................................3, 5

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) ...............................4

*Magwood v. Patterson*, 561 U.S. 320 (2010)...........................................................4

*McGirt v. Oklahoma*, 591 U.S. 894 (2020)..............................................................4

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) ............................................. 4-5

*Russello v. United States*, 464 U.S. 16 (1983) ........................................................3

*United States v. Becerra*, 73 F.4th 966 (8th Cir. 2023)............................................9

*United States v. Brennan*, 389 F.Supp.3d 206 (W.D. N.Y. 2019) ..........................10

*United States v. Carrington*, 91 F.4th 252 (4th Cir. 2024).....................................12

*United States v. Cruz-Ruiz*, 585 F.Supp.3d 167 (D. P.R. 2022).............................11

*United States v. Ferguson*, No. 04-14041 CR, 2020 WL 4922360
  (S. D. Fla. Aug. 21, 2020) ...................................................................................10

*United States v. Gamarra*, 940 F.3d at 1315 (D.C. Cir. 2019)................................10

*United States v. Godinez-Ortiz*, 563 F.3d 1022 (9th Cir. 2009)..........................4, 10

*United States v. Hardy*, 770 F.Supp.2d 410 (D.Me. 2011) ....................................10

*United States v. S.A.*, 129 F.3d 995 (8th Cir. 1997) .................................................9

*United States v. Wong Kim Bo*, 472 F.2d 720 (5th Cir. 1972).....................................3

**STATUTES**

18 U.S.C. § 4246......................................................................................... 1-13

# SUMMARY OF ARGUMENT

The government continues to argue, as it did in the district court, that the district court properly ordered a preliminary examination under 18 U.S.C. § 4246 to determine whether a subsequent examination under § 4246 was warranted. The government does not contend—nor could it—that the statutes provide for such an examination. Instead, the government resorts to claiming that the exam is authorized, not by the statute, but implicitly. The government characterizes the purported authorization in different ways: to "*effectuate the purpose* of the statutory scheme, the facility director must be given an opportunity to conduct an *initial assessment* of the individual and decide whether to issue the dangerousness certificate" (GB 20);[1] the "statutory scheme *contemplates*" temporary detention of a defendant so that the director "may conduct a dangerousness assessment" as a "*threshold step*" under § 4246 (GB 15); "section 4246 *permits* the defendant's continued temporary detention for the director's *determination* whether to issue the dangerousness certificate" (GB 20); the "facility director's decision whether to file a certificate of dangerousness under § 4246(a) *necessarily encompasses* the authority to evaluate the individual" (GB 26) (emphasis added to all).

---

[1] "GB" refers to the government's brief. "APP" refers to the appendix filed with Mr. Williamson's appellant's brief.

1

The government and the district court concede that the plain language of § 4246 does not provide for the pre-certification examination ordered in Mr. Williamson's case. But both agreed that the statute "necessarily contemplates" such a procedure. That conclusion, which is contrary to the statute, is simply wrong.

Left totally unexplained in the government's brief is what happens if the district court's order is affirmed, an exam is conducted, and the director subsequently issues a dangerousness certificate. At that time, before any hearing, another examination would take place, and Mr. Williamson would also be entitled to his own examination—but that would be long after the initial exam and the result would be that the government would get two exams and Mr. Williamson would only get one later one. That is directly contrary to what the statutes specifically provide and therefore cannot be what the statutes "contemplate" or "necessarily encompass," which are not proper bases for the order in any event.

## **ARGUMENT**

I. **THE DISTRICT COURT IMPROPERLY ORDERED AN EXAMINATION OF MR. WILLIAMSON TO DETERMINE WHETHER A DANGEROUSNESS CERTIFICATE SHOULD BE FILED**

   A. **The District Court's Order Was Contrary to the Plain Language of the Statute**

Congress, in a comprehensive set of statutes, provided procedures and standards for examinations and detention of federal defendants suffering from

various mental health issues. In that scheme, Congress provided for psychological examinations in certain circumstances. *See* 18 U.S.C. § 4241(b) (examination to determine competency); § 4242(a) (examination to determine insanity at the time of the offense); § 4242(b) (examination of person found not guilty by reason of insanity); § 4244(b) (examination before sentencing of person found guilty); § 4245(b) (examination of person serving a sentence requiring transfer to a facility for treatment); § 4246(b) (examination prior to a dangerousness hearing, but only after issuance of a dangerousness certificate). The government characterizes § 4246 as "specifically designed" (GB 18) to accomplish its purpose, but as part of that "specific design," Congress did not provide for any exam in connection with the decision of whether to issue a dangerousness certificate. The Supreme Court has addressed such a situation:

> "'[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.'" *Dean v. United States*, 556 U.S. 568, 572 (2009) (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)). And "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act,'" we generally presume that Congress did so intentionally. *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (per curiam)).

*Fischer v. United States*, 603 U.S. 480, 508 (2024).

Congress obviously knew how to provide that a psychological examination could be conducted, as it did so in several provisions of the statute. But it provided

3

no such provision with respect to the preliminary decision whether to issue a certificate. That alone should resolve this case.

In addition, in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), the Court rejected an argument almost identical to the government's argument about what § 4246 "contemplates" or "necessarily encompasses." In *Castro-Huerta*, the respondent based an argument on a claim of what "Congress *implicitly intended*" to provide in a statute. *Id.* at 642. The Court held:

> The fundamental problem with Castro-Huerta's implicit intent argument is that the text of the General Crimes Act says no such thing. Congress expresses its intentions through statutory text passed by both Houses and signed by the President (or passed over a Presidential veto). As this Court has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text. The Court may not "replace the actual text with speculation as to Congress' intent." *Magwood v. Patterson*, 561 U.S. 320, 334 (2010). Rather, the Court "will presume more modestly" that "the legislature says what it means and means what it says." *Henson* v. *Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (internal quotation marks and alterations omitted).

*Id*. Thus, the government's "wishes" as to what § 4246 contemplates "are not laws." *McGirt v. Oklahoma*, 591 U.S. 894, 907 (2020).

The government, as it did in the district court, relies primarily on the Ninth Circuit's holding in *United States v. Godinez-Ortiz*, 563 F.3d 1022, 1032 (9th Cir. 2009), that § 4246 "necessarily contemplates" an evaluation to decide whether to issue a dangerousness certificate (GB 15, 20). The analysis in *Godinez-Ortiz* is

cursory at best—the court spent more time addressing the appealability of the order than the substantive issues. In the end, the court concluded that § 4246 "*necessarily contemplates* the temporary commitment" of a defendant so the "director can conduct the evaluation necessary to make the certification decision." 563 F.3d at 1032 (emphasis added). This conclusion, though, directly conflicts with the Supreme Court's holdings in *Fischer* and *Castro-Huerta.*

The government further claims that the statute permits the district court to "detain the defendant temporarily for the purpose of undergoing a preliminary dangerousness assessment" (GB 17). The government points to no statutory provision allowing a "preliminary assessment"—because there is no such provision.[2] To say that the director "must be given an opportunity to conduct an initial assessment of the individual" (GB 20), whatever that means, to decide whether to issue a certificate is much different than ordering the examination the

---

[2] Through the use of ellipses and brackets, the government mischaracterizes the record. In its brief, the government contends that it told the district court that it was:
> not saying that . . . because the statute doesn't prohibit the court from doing something . . . [t]he court can do anything it wants.

(GB 13 citing APP 364). The transcript actually reads:
> So we are not saying that just, you know, because the statute doesn't prohibit the Court from doing something. The court can do anything it wants.

(APP 364). The transcript reads as two separate sentences: one an incomplete thought and the other a declarative statement. The government does not contend that the transcript is incorrect, and it made no motion to amend or correct the transcript.

5

district court ordered in this case. The district court's order did far more than "afford[] the director an opportunity to assess whether" a dangerousness certificate should be issued (GB 24).

Indeed, the government falsely claims that the district court did not order "a psychological examination," but only "ordered the director to make the preliminary dangerousness determination" (GB 25). The district court in fact ordered that Mr. Williamson "be examined" (APP 425). The government fails to acknowledge that its own motion sought an "evaluation pursuant to 18 U.S.C. § 4246" and requested that Mr. Williamson "be examined" to determine whether FCI Butner should issue a certificate (APP 267). The motion specifically sought a "determination of the defendant's dangerousness prior to the conclusion of this case" (APP 267). The government also supports the district court's provision of the 45-day period for the exam, which is identical to the statutory period for the dangerousness exam *after* a certificate has been issued and prior to the hearing on dangerousness.

Mr. Williamson had been at Butner for years, serving his prior sentence and in pretrial custody in the present case, and, thus, the director had ample opportunity and information upon which to "assess" whether to issue a certificate. In fact, the government contradicts its own argument concerning the need for an opportunity for an assessment, stating that "the record in this case contains ample evidence that

Williamson may pose a danger to others if released" (GB 24). The government's motion argued that Mr. Williamson's prior record "reflects a serious risk of danger to the community, and he should be evaluated under Section 4246 before he is released" (APP 271). And the government's brief offers details about Mr. Williamson's prior conviction in D.C. and the current charges (GB 5-6).

The government claims it sought "to notify the FCI Butner director of the pending dismissal and afford the director an opportunity to issue a dangerousness certificate" (GB 12). But that could have been done instantly in a phone call or by email. The competency/insanity exam of Mr. Williamson had been done at Butner. And, at the last court hearing in the case on January 30, 2024, the government admitted that Butner had sent the government an email updating Mr. Williamson's situation (APP 404), indicating that Butner was following the case.

It is hypocritical for the government to argue that Butner would not issue a certificate because none of the three statutory conditions had been satisfied (APP 385-88) but that it should and will conduct an exam nowhere authorized by the statute. The government claimed in the district court that no certificate had been issued because Butner adhered to the statute and not one of its triggering provisions had occurred (APP 385). Of course, Butner did not adhere to the statute when it conducted the competency exam, and it would not be doing so if it conducted an

7

exam under § 4246 before any certificate was issued. Such selective interpretation of the statute is inconsistent with any proper notion of statutory interpretation. In fact, the pre-certificate examination renders § 4246 meaningless, as neither the government nor the district court indicated how the § 4246 hearing would proceed when an examination had already been conducted.

The government argues that § 4246 "*grants* this authority" and that the statute permits a district court "to detain the defendant temporarily for the purpose of undergoing a preliminary dangerousness assessment" (GB 17) (emphasis added). Yet, the government fails to identify any actual text of § 4246 that *grants* such authority.

The government falsely asserts that Mr. "Williamson's argument confuses the procedural posture of the case" (GB 25). It is the government that confuses what the statute provides. In addition to being subject under the district court's order to an extra examination not provided for anywhere in the statute, Mr. Williamson is denied the important right in connection with this extra-statutory examination to have "an additional examiner" he selects, as is specifically provided under § 4246.

The government quotes the district court's order, issued earlier in this case, ordering the competency examination and, at the same time, an exam for mental capacity at the time of the offense (GB 9). The government fails to note that Mr.

Williamson strongly objected to the latter exam, as the statute provides for such an exam only if the defendant has given notice of an intent to raise an insanity defense. At the time the district court ordered the exam, the government stood by silently. Only after the exam was completed did the government agree that it should not have taken place (APP 261). Mr. Williamson has also constantly challenged the validity of the report, both procedurally and substantively.

The government, citing *United States v. S.A.*, 129 F.3d 995, 999 (8th Cir. 1997), states that § 4246 was "specifically designed" to "avert" public danger and to "provide a safeguard" from release of certain individuals (GB 18). Yet, at the same time, the government argues that what Congress "specifically designed" in the statute should be rewritten by the courts. That is contrary to the cases cited above.

Interestingly, the government cites *United States v. Becerra*, 73 F.4th 966, 968-69 (8th Cir. 2023), as summarizing the process under § 4246. What the government fails to point out is that in *Becerra*, which involved a defendant found incompetent to stand trial, a § 4246 certificate "from the warden of FMC Rochester" was filed. *Id.* In addition, a Risk Assessment Review Panel at FMC Rochester had examined the defendant before the certificate was filed. Subsequently, a hearing was held to determine whether a § 4246(a) commitment was warranted. This court has similarly held that courts can rely "on experts who reached their opinions based on

9

a review of a patient's medical records and other information without personally conducting an examination." *United States v. Gamarra*, 940 F.3d at 1315, 1318 (D.C. Cir. 2019).

The government also cites several district court cases, which essentially just follow *Godinez-Ortiz*. *See*, *e.g. United States v. Hardy*, 770 F.Supp.2d 410, 414 (D.Me. 2011) (adopting "precise procedure" used in *Godinez-Ortiz*); *United States v. Brennan*, 389 F.Supp.3d 206, 210 (W.D. N.Y. 2019) (court finds *Godinez-Ortiz*'s "reasoning persuasive").

In *Brennan*, the court did not order any examination of the defendant, but simply allowed the director of the facility to "assess" and "determine" whether a certificate should be issued, although the statute did not "explicitly state" that hospitalization was permitted to "perform an initial assessment of dangerousness." *Id.* As discussed above, that reasoning is incorrect.

In *United States v. Ferguson*, No. 04-14041 CR, 2020 WL 4922360 at * 2 (S. D. Fla. Aug. 21, 2020), the court agreed that "§ 4246 contains no provision expressly authorizing a court to order a facility to conduct an evaluation for the purpose of determining whether to issue a dangerousness certificate." Nonetheless, the court found that the statute did not "foreclose[d] the initiation of this process in other ways, including by way of a government motion." *Id*. Again, this reasoning is flawed.

While relying on these inapposite cases, the government's only criticism of *United States v. Cruz-Ruiz*, 585 F.Supp.3d 167 (D. P.R. 2022), is that it "ignored a key element of the statutory scheme," that being that the director's decision whether to file the certificate "*necessarily encompasses* the authority to evaluate the individual" (GB 25-26) (emphasis added). But criticizing the court in *Cruz-Ruiz* for fidelity to the statute and the statutory interpretation decisions of the Supreme Court is no criticism at all.

The government frames the issue as whether the district court erred in ordering Mr. Williamson "to remain at FCI Butner so that the director could determine whether to file a dangerousness certificate under 18 U.S.C. § 4246" (GB 1). But this simply ignores that the order provided for Mr. Williamson "to be examined" and for an "evaluation" (APP 425). The director's certificate is the first step in the process and nothing in the statute permits an examination of the defendant before the certificate is issued. In fact, as the government acknowledges, the statute specifically provides for an examination of the defendant only *after* the certificate is issued (GB 19). The district court's order is contrary to the statute and this Court should vacate the order.

## B. The District Court Had No Authority to Issue Any Order Related to § 4246

Overarching all of the above, the district court had no jurisdiction to issue an order regarding the § 4246 procedures. Section "4246 allows the government to seek [a defendant's] civil commitment from the court of the district where he is confined." *United States v. Carrington*, 91 F.4th 252, 262 (4th Cir. 2024). The district court itself acknowledged that if the director at Butner filed a dangerousness certificate, any "matter thereafter" would have to take place in North Carolina (APP 416), and the government agreed (APP 351, 414).

The district court's order actually states that it grants the "Government's Motion for an Evaluation Pursuant to 18 U.S.C. § 4246" (APP 425). It ordered that Mr. Williamson "be *examined* to determine whether the director of FCI Butner should file a certificate pursuant to 18 U.S.C. § 4246" (APP 425) (emphasis added).

On the first page of its brief, the government states that the district court's order "requir[ed] the director of the Federal Correctional Institution at Butner to conduct a dangerousness evaluation under 18 U.S.C. § 4246" (GB1). The government later calls it "a preliminary determination as to Williamson's dangerousness under 18 U.S.C. § 4246" (GB 15). Whatever term the government uses, only the district court in North Carolina could issue an order relating to any § 4246 proceedings. "These provisions designate the *facility director* as the bridging

12

force between criminal and civil proceedings, not the criminal court." *Cunningham*, 91 F.4th at 268 (emphasis in original).

The government's motion itself sought an "evaluation pursuant to 18 U.S.C. § 4246" and asked that Mr. Williamson "be examined" to determine whether FCI Butner should issue a certificate (APP 267). The motion specifically sought a "determination of the defendant's dangerousness prior to the conclusion of this case" (APP 267). Despite these clear statements, throughout its brief the government seriously mischaracterizes the district court's order. *See, e.g.*, GB at 27 (the district court did not "initiate a § 4246 proceeding," but "instead gave the director of FMC Butner an opportunity to file a dangerousness certificate in the first instance"). As discussed above, the 45-day period allowed for the exam is identical to the period for the dangerousness exam prior to the hearing on dangerousness.

The government argues that "the district court thus acted well within its authority under § 4246(a)" in issuing its order, and, despite the fact that Mr. Williamson is in custody at FCI Butner, had "jurisdiction to issue the present order" (GB 24, 28). The government bases this claim on the fact that the district court could dismiss the charges in the criminal case (GB 28). That fact, however, gives the district court no authority to issue any order related to the § 4246 proceeding. The district court's order should be vacated on this ground as well.

13

## CONCLUSION

For all the reasons discussed above, this court should vacate the district court's order and remand the case to the district court for dismissal of the indictment.

Respectfully submitted,
A. J. KRAMER
Federal Public Defender

_____/s/_____
A. J. KRAMER
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500
a.\_j.\_kramer@fd.org

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Opening Brief was prepared in Times New Roman 14-point proportionally spaced font and contains 3,112 words in compliance the type-volume limitations of Fed. R. App. P. 32(a)(7).

<pre>
                                   /s/
                              _____
                              A. J. Kramer
                              Assistant Federal Public Defender
</pre>